**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JILL MCGEE,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No.   11 CV 2512** |
| | ) | |
| **CITY OF CHICAGO, an Illinois** | ) | **JURY DEMANDED** |
| **Municipal Corporation, ELLEN** | ) | |
| **O'CONNOR, individually,** | ) | |
| **ROSEMARIE S. ANDOLINO,** | ) | |
| **Individually,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## COMPLAINT

Plaintiff, JILL MCGEE, by and through her attorneys, Keith L. Hunt and Bradley E. Faber of Hunt & Associates, P.C., complains against the Defendants as follows:

### THE PARTIES

1.      Jill McGee ("McGee"), seeks redress for the deprivation of McGee's civil and constitutional rights pursuant to 42 U.S.C. § 1983 and  for violations of the Americans with Disabilities Act of 1990 ("ADA") (42 U.S.C. § 12101 *et seq.*), the Family and Medical Leave Act ("FMLA") (29 U.S.C. § 2601 *et seq.*), for retaliation and hostile working environment and under the Equal Protection clause of the United States Constitution. This action seeks declaratory and injunctive relief as well as damages and other available remedies.

2.      McGee also brings state law claims pursuant to the Court's supplemental jurisdiction for violations of the Illinois Human Rights Act and for intentional torts committed against her by her immediate supervisor, Ellen O'Connor ("O'Connor").

3.     McGee, is a resident of Chicago, Cook County, Illinois.

4.     Andolino is a resident of Chicago, Cook County, Illinois.  Andolino is sued in her individual capacity.

5.     O'Connor is a resident of Chicago, Cook County, Illinois.  O'Connor is sued in her individual capacity.

6.     At all relevant times since March 2009, McGee has been a member of a protected class, disabled persons and/or has been perceived as disabled.

7.     Defendant City of Chicago ("City") is a municipality incorporated under the laws of the State of Illinois.

## JURISDICTION AND VENUE

8.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§1331, 1343(4), 2201, 2202, and 1367.

9.     Venue is proper under 28 U.S.C. §1391 because the acts complained of by the Plaintiff occurred within this judicial district and because the Defendants' principal places of business are within this district.

## GENERAL ALLEGATIONS

10.     The City created a Department of Aviation ("DOA") to manage certain functions associated with the operation of O'Hare International Airport and Midway International Airport.

11.     In February 2007, the City hired McGee as Deputy Commissioner of Marketing and Communications within the DOA. In 2008, Plaintiff was given the additional responsibility of overseeing Communications and her title was then changed to Deputy Commissioner of Marketing and Communications.

12.     In 2007, Defendant, O'Connor, was the Deputy Director of the O'Hare Modernization Project, within the DOA. Once Andolino became DOA Commissioner, she placed O'Connor as Managing Deputy overseeing Human Resources, Marketing and Communications.

13.     At all relevant times, and at least as of March of 2009, O'Connor was McGee's immediate supervisor at the DOA.  O'Connor is sued in her individual capacity.

14.     At all relevant times, Defendant Rosemarie S. Andolino ("Andolino") was the Commissioner of the DOA.  Andolino is sued in her individual capacity.

15.     In February or at least by March 3, 2009, McGee was diagnosed with breast cancer.

16.     Immediately thereafter, on March 4, 2009, McGee applied for FMLA leave with the City and/or DOA's Human Resources department ("HR").

17.     On March 13, 2009, McGee received a letter from HR authorizing intermittent Family and Medical Leave Act leave for cancer treatment and recovery. Leave was approved for the period March 13, 2009-December 31, 2009.

18.     That same day, March 13, 2009, McGee underwent the first of three surgeries as treatment for her cancer.  Two subsequent surgeries followed on March 19, 2009 and March 27, 2009. This was followed by a course of radiation therapy and numerous follow-up consultations and medical appointments over the following months---which continue to date.

19.     Cancer and treatment physically and emotionally weakened McGee.

20.     Eager to return to work, in April 2009 McGee contacted O'Connor to discuss return-to-work options.  McGee was not sufficiently recovered to return to work

full-time, but expressed that she could perform limited part-time work one to three days a week until she was more fully recovered.  She indicated she could be most helpful if she were allowed to work from the DOA's satellite office in downtown Chicago.

21.     The satellite office is located at 30 North LaSalle Street, Chicago, Illinois.

22.     Since her hiring, and prior to her cancer diagnosis McGee worked approximately one day a week from the downtown office.  The downtown office was equipped with computers, telephones and the same access to e-mail and employees.

23.     McGee's job required her to attend meetings with other downtown departments and external agencies.  On days she was downtown for these meetings, McGee would often work the remainder of the day out of the downtown office.

24.     However, in response to McGee's April inquiry, O'Connor sarcastically stated "I would like to work downtown too, but that is not possible."

25.     O'Connor refused Plaintiff the reasonable accommodation of working days or partial days from the downtown office.  Thus, O'Connor refused McGee's offer to return to work in any capacity until McGee could manage the two to three hour commute to the O'Hare office from her downtown home and doctor's appointments.

26.     On May 14, 2009, McGee returned to work full-time.

27.     Upon her return, McGee submitted a request for accommodation -- ADA accommodation letter.  The letter requested that she be allowed to work from the 30 North LaSalle office intermittently -- on days when she had medical appointments and when she experienced fatigue due to post-surgical cancer treatment.  The request also sought accommodations based on limitations for lifting, pushing/pulling, and reaching.

28.     HR directed McGee to complete and submit the accommodation letter.

29.     On May 19, 2009, a "Reasonable Accommodation Interactive Process" memo was created by the DOA indicating that working at the downtown office would not eliminate an essential job function nor did it find that such a request would create an undue hardship for the DOA. Nevertheless, O'Connor denied McGee's request.

30.     On or about May 18, 2009, O'Connor summoned McGee to her office and in a loud and angry tone asked McGee why she submitted the ADA request.

31.     McGee's submission of the ADA form upset O'Connor. O'Connor exclaimed "this is now a legal document and I have to do something with this.  Do you know how many lawsuits we have?"

32.     McGee informed O'Connor that she submitted the form on HR's instruction so she could work full-time while continuing with her cancer treatment.

33.     O'Connor continued berating McGee about her illness and surgery. O'Connor compared McGee to other people who "had the same thing [cancer] and did not require any special accommodation."

34.     O'Connor criticized McGee, stating "you missed the last two months of work. Do you realize all of the things that I've had to do in your absence?  You have a lot of catching up to do . . ."

35.     When McGee began to tear-up, O'Connor asked her why she was upset. McGee indicated O'Connor's tone and language intimidated her.  O'Connor indicated "I am not yelling.  You haven't begun to hear me yell!"

36.     On May 19, 2009 McGee met with William F. McKeown ("McKeown"), the DOA's Assistant Commissioner of HR.

37.     O'Connor was present at the meeting in her capacity as McKeown's supervisor and the head of Human Resources.

38.     McKeown informed McGee her ADA request to work intermittently from the downtown office was denied.  McGee was told to use unpaid FMLA leave on days when her illness or treatment would not allow her to make the commute to O'Hare.

39.     McKeown's instruction did not address the FMLA and ADA's separate statutory rights and protections.  The City never provided a reasonable accommodation corresponding with McGee's disability.  Upon information and belief, O'Connor urged McKeown to deny McGee a reasonable accommodation of working intermittently from the downtown office.

40.     More than two months passed without any further feedback from Defendants as to McGee's request for a reasonable accommodation.

41.     On July 28, 2009, McKeown advised McGee her ADA request for accommodation was approved in part.  However, McGee's request seeking a reasonable accommodation of working limited time from the downtown office remained under review.  McKeown requested further information from McGee in order to respond to this aspect of the accommodation request. Throughout this time, O'Connor continued to dispute McGee's need for an accommodation.

42.     Defendants did not expeditiously engage McGee in an interactive process to seek an alternative reasonable accommodation or any reasonable accommodation for McGee's disability while she was receiving cancer treatment.

43.     McGee previously provided the City with all necessary information concerning her ADA request, but she again provided full responses to the City's July 28, 2009 communication.

44.     In August of 2009, O'Connor accosted McGee in the elevator lobby of the residential building in which both O'Connor and McGee resided.  O'Connor verbally assaulted and bullied McGee regarding work issues.  McGee repeatedly requested that they discuss any work-related issues at work.

45.     O'Connor's verbal assault in their residential building intimidated McGee and embarrassed her in front of other neighbors.

46.     On or about August 25, 2009, O'Connor e-mailed McGee and other employees stating a weekly meeting was cancelled, but that O'Connor still expected them to submit a weekly project list.  McGee agreed to provide her list, but inquired why the list was needed if there was not going to be a meeting.

47.     McGee's question infuriated O'Connor.  O'Connor stormed into McGee's office, again berating McGee.

48.     During this incident, O'Connor leaned into McGee's face and threatened and intimidated McGee, stating " you need to start acting like a Deputy."

49.     McGee, fearful for what O'Connor might do, left the office and started towards McKeown's HR office.  O'Connor followed McGee down the hallway, yelling at her the entire way, in the presence of co-workers and other employees.

50.     McKeown offered to mediate the situation, but O'Connor told him she did not want the situation mediated. O'Connor requested to speak with McKeown privately, since O'Connor was McKeown's supervisor, and oversaw Human Resources.

51.     Following the private meeting, O'Connor removed McKeown as the acting HR representative on McGee's ADA/FMLA case.

52.     On or about August 26, 2009, counsel for McGee submitted a letter to the City indicating it violated her rights under the ADA, and asking that the City comply with its legal obligations and engage in a dialogue designed to amicably resolve these issues.  The City never responded to this request.

53.     Instead, the City and O'Connor engaged in additional discriminatory conduct against McGee, including continuing to deny reasonable accommodation requests with no objective evidence showing why providing the accommodation would be an undue hardship.

54.     From the point McGee was diagnosed with cancer and/or sought to exercise her rights under the ADA and FMLA, Defendants subjected McGee to heightened scrutiny as part of a larger plan to discharge McGee.

55.     On or about September 14, O'Connor stated McGee was not adequately managing her team or certain projects, suggesting her cancer-related absences for treatment negatively impacted to her job performance.

56.     O'Connor also harassed McGee questioning her legitimate absences from work, even including McGee's absence for jury duty.

57.     O'Connor told McGee she was on "official notice," telling her she could possible face imminent termination.

58.     September 14, 2009 was the first time McGee's job performance at the DOA had ever been criticized.

59.     O'Connor did not provide any examples of behavior that warranted McGee being put on final notice. O'Connor provided no guidance how McGee could adjust her behavior or improve performance.

60.     On or about October 29, 2009, McGee took the morning to meet with the Mayor's Office for Persons with Disabilities. The meeting regarded the City's failure to provide a reasonable accommodation or to sufficiently engage McGee regarding her May 14, 2009 request. O'Connor was informed of this meeting before it occurred.

61.     Even so, O'Connor criticized McGee via e-mail for not disclosing in writing the purpose for McGee's morning absence from the office.

62.     On February 9, 2010, O'Connor entered McGee's office and in a threatening and intimidating manner informed McGee "someone was going to lose their job . . .", "and it is not going to be me [O'Connor]."

63.     O'Connor directed her statements to McGee because O'Connor was unhappy with McGee's attempts to enforce her statutory and constitutional rights. O'Connor intended to intimidate McGee and make her fearful she would lose her job.

64.     At all times, McGee satisfactorily performed her job duties but was denied reasonable accommodations under the ADA and has been retaliated against and repeatedly harassed because she attempted to exercise her rights under the ADA and FMLA.

65.     On February 10, 2010, McGee filed timely charges with the Equal Employment Opportunity Commission ("EEOC") (charge number 440201002260). These charges were also assigned to the Illinois Department of Human Rights ("IDHR") (charge number 2010 CN 3272) (Exhibit A).

66.     On March 30, 2010, subsequent to McGee's filings, Defendants O'Connor and Andolino scheduled a status meeting to discuss several projects.

67.     O'Connor gave McGee no direction on the main project up for discussion. O'Connor's unavailability prevented McGee from proceeding on some projects.

68.     Nevertheless, Andolino criticized McGee's work, and in concert with O'Connor, threatened, intimidated and harassed McGee.

69.     Andolino and O'Connor's conduct largely constituted a personal attack on McGee in retaliation for McGee's filing of charges with the EEOC and IDHR.

70.     Andolino retaliated against McGee by submitting a memo to McGee's file criticizing McGee's work performance in an effort to "paper the file." Andolino knew of the pending EEOC charges when she submitted the memo to McGee's file.

71.     In April 2010, McGee requested FMLA leave or short-term disability leave as a result of O'Connor's ongoing harassment, verbal assaults and intimidation. McGee's treating physician insisted McGee submit such a request.

72.     O'Connor refused to process certain documents related to this request. These documents had been in O'Connor's control for weeks. O'Connor's delay in processing these documents interfered with the leave request's approval.

73.     O'Connor's delay in processing the materials constituted further retaliation and harassment against McGee, stemming from McGee's medical disability, ADA and FMLA requests. O'Connor intentionally discriminated against, retaliated against and harassed Plaintiff.

74.     On or about April 9, 2010, McGee timely filed a second action with the EEOC and IDHR (2010 CN 4093) (Exhibit B).

75.     On or about April 23, 2010, McGee's request for FMLA leave or short-term disability leave was approved.

76.     McGee continues to be on Personal Medical Leave, which is authorized through April 22, 2011.

77.     On February 28, 2011, the Illinois Department of Human Rights issued a Right to Sue letter related to Charge Number 2010-CN-3272  (Exhibit C) and on March 14, 2011, the Department of Justice issued a Notice of Right to Sue related to charge number 440201002260 (Exhibit D).

78.     This Complaint is filed within 90 days of receipt of the Notice of Right to Sue.

## **WORKPLACE VIOLENCE**

79.     As set forth in greater detail in Count IX, and in paragraphs 43-48 above, incorporated by reference herein, O'Connor repeatedly confronted, intimidated, and assaulted Plaintiff placing her in fear of imminent bodily harm.

80.     At all times, O'Connor's conduct was calculated to instill fear and to frighten and intimidate Plaintiff.

81.     Plaintiff filed a workplace violence complaint against O'Connor but to date the City has not undertaken any investigation, nor has it contacted the Plaintiff to interview her regarding her complaints and claims.  On information and belief, the City has failed and refused to discipline O'Connor for her wrongful and unlawful conduct.

82.     As a result of O'Connor's conduct, including her verbal assaults and her threats, intimidation, retaliation and harassment, Andolino's turning a blind eye toward

such conduct and the City's failure to investigate Plaintiff's allegations of workplace violence, the Plaintiff has been subjected to a hostile work environment.

**COUNT I**
**VIOLATION OF TITLE I**
**OF THE AMERICANS WITH DISABILITIES ACT ("ADA")**
**(FAILURE TO PROVIDE REASONABLE ACCOMMODATION)**
**(AGAINST THE CITY)**

83.     The Plaintiff adopts and incorporates by reference the allegations in paragraphs 1-77 of this Complaint.

84.     At all times relevant to this Complaint, the City constitutes McGee's "employer" as defined by the ADA.

85.     At all times relevant to this Complaint, McGee was a qualified individual with a disability under the ADA.

86.     McGee's cancer constituted a disability under the ADA because it substantially limited her major life activities, including interacting with others, sleeping, and eating, and led in part to depression.

87.     Title I of the ADA prohibits the City from discriminating against McGee because of McGee's disability in regard to advancement, discharge, employee compensation, and other terms, conditions and privileges of employment. (42 U.S.C. § 12112(a)).

88.     McGee was qualified to perform her job and performed her job satisfactorily, even though she had a disability.

89.     McGee requested a reasonable accommodation - being allowed to work intermittently from the downtown satellite office.

90.     The City was aware of McGee's disability at the time of the request.

12

91.     Allowing McGee to work intermittently from the downtown location or offering some comparable reasonable accommodation would not have been an undue hardship for the City or the DOA.

92.     The City failed to provide a reasonable accommodation to McGee which would have allowed her to work in a part-time or "Light Duty" capacity.

93.     Instead of providing a reasonable accommodation to allow Plaintiff to work occasionally from the downtown office and to attend medical treatments on her unpaid lunch hour, the City and O'Connor forced McGee to use her unpaid FMLA leave.  This conduct constitutes an adverse employment action.

94.     The City further violated McGee's rights under the ADA by:

a.  failing to provide a reasonable accommodation for McGee to perform some work, even on days her treatment and disability prevented her from traveling to the O'Hare;

b.  treating McGee in a manner that adversely affected her opportunity or status with the DOA because of her disability when O'Connor, with Andolino's knowledge, harassed McGee for submitting an ADA accommodation request, and when O'Connor and Andolino criticized McGee in person and in writing and threatened her employment, only after it became apparent that McGee was going to seek to enforce her ADA protected rights;

c.  utilizing "standards, criteria, and methods of administering the terms, conditions and privileges of employment" that discriminated against McGee on the basis of her disability;

    d.  retaliating against McGee for asserting her rights under the ADA and FMLA law when McGee submitted her ADA accommodation request and filed a timely charge with the EEOC;

    e.  coercing, intimidating, threatening and interfering with McGee's exercise of her rights under the ADA; and

    f.  depriving McGee of equal benefits and privileges of employment enjoyed by other similarly situated employees without disabilities in violation of 29 CFR § 1630.2(o)(1)(iii).

95.    Plaintiff was required to tolerate and endure O'Connor's and Andolino's retaliation and harassment as a condition of her employment.

96.    Andolino knew of and/or turned a blind eye to O'Connor's retaliation toward Plaintiff and harassment, even though such conduct violated McGee's ADA rights.

97.    The City, through O'Connor and Andolino harassed, retaliated against and otherwise violated McGee's ADA rights, proximately causing Plaintiff's injuries.

**COUNT II
VIOLATION OF THE ADA
(RETALIATION)
(AGAINST THE CITY)**

98.    The Plaintiff adopts and incorporates by reference the allegations in paragraphs 1-96 of this Complaint.

99.    At all times relevant to this Complaint, the City constitutes McGee's "employer" as defined by the ADA.

100.     At all times relevant to this Complaint, McGee was a qualified individual with a disability under the ADA.

101.     McGee's cancer constituted a disability under the ADA because it substantially limited her major life activities, including interacting with others, sleeping, and eating, and contributed to depression.

102.     Title V of the ADA prohibits the City from retaliating against McGee for opposing any practice otherwise made unlawful under the ADA, or because McGee made a charge or participated in an investigation under the ADA.

103.     McGee filed an ADA request form seeking a reasonable accommodation with HR.

104.     O'Connor confronted and criticized McGee for filing the request. O'Connor subsequently assaulted and harassed McGee because McGee continued to pursue a reasonable accommodation.

105.     McGee complained or attempted to complain to HR of O'Connor's harassment and retaliation due to McGee seeking an ADA reasonable accommodation. This was a protected activity under the ADA.

106.     Because of McGee's complaint/attempted complaint, O'Connor threatened terminating McGee.

107.     McGee filed charges with the EEOC based on O'Connor's continued harassment and hostile work environment, and based on the City's failure to reasonably accommodate McGee's disability.  This was a protected activity under the ADA.

108.     In response to McGee filing EEOC charges, O'Connor continued to harass McGee.  Additionally, Andolino submitted a memo to McGee's personnel file in an effort

15

to "paper the file" with negative performance critiques. This was an adverse employment action against McGee.

109.    Plaintiff was forced to tolerate and endure O'Connor's retaliation and harassment as a requirement for her employment.

110.    Andolino knew of or turned a blind eye toward O'Connor's retaliation and harassment of McGee, even though such conduct violated the City's obligations to McGee under the ADA.

111.    The City, through O'Connor and Andolino harassed, retaliated against and otherwise violated McGee's ADA rights, proximately causing Plaintiff's injuries.

## COUNT III
## VIOLATION OF §1983: ADA
## (AGAINST ALL DEFENDANTS)

112.    The Plaintiff adopts and incorporates by reference the allegations of paragraphs 1-110 of the complaint.

113.    At all relevant times, the ADA was in effect, granting McGee federally protected rights due to her cancer and related disability.

114.    O'Connor, in her role as McGee's supervisor and head of HR for McGee's division intentionally subjected McGee to discriminatory treatment by creating a hostile work environment, subjecting McGee to heightened scrutiny and demeaning her illness and disability, such that the conditions of McGee's employment were altered.

115.    At all times O'Connor acted under color of law.

116.    O'Connor remarked that McGee was on "official notice" of losing her job, even though McGee had not received any negative performance evaluations prior to that time.

117.    O'Connor refused to provide any reasonable accommodations to McGee, in light of McGee's condition and  actual or perceived disability.

118.    O'Connor knew other DOA employees benefited from such accommodations, including Erin O'Donnell ("O'Donnell"), a similarly situated employee who was the Managing Deputy of Operations at Midway.

119.    Other non-disabled employees, including O'Donnell have been allowed to work intermittently from home and/or the downtown office.

120.    Allowing McGee to work intermittently from the downtown office would not have caused an undue hardship to the City or the DOA.

121.    O'Connor refused to allow HR staff under her direction to grant McGee any reasonable accommodations during the time of her cancer treatment and disability.

122.    At all times, Andolino, in her role as the Commissioner of the DOA, and O'Connor as head of Human Resources, acted under color of law.

123.    Andolino violated McGee's ADA rights when she retaliated against McGee for filing an EEOC charge and subsequently filed a negative performance memo in McGee's personnel file.

124.    Andolino was a final policymaker for policies within the DOA.

125.    Andolino intentionally subjected McGee to discriminatory treatment or knowingly turned a blind eye to O'Connor's discriminatory treatment, including heightened scrutiny and demeaning McGee because of her disability.

126.    O'Connor and Andolino's conduct deprived McGee of ADA protected rights, privileges and immunities.

127.   It was the City's custom and policy to allow the Commissioner of the DOA and even the Deputy Director of the O'Hare Modernization Project to control HR personnel within the DOA.

128.   This custom and policy essentially prevented employees such as McGee from effectively finding reprieve through complaints against her supervisors' illegal conduct.

**COUNT IV**
**VIOLATION OF §1983: EQUAL PROTECTION**
**BASED ON DISABILITY (CANCER)**
**(AGAINST ALL DEFENDANTS)**

129.   The Plaintiff adopts and incorporates by reference the allegations of paragraphs 1-127 of the complaint.

130.   The City and O'Connor intentionally subjected McGee to unequal and discriminatory treatment by creating a hostile work environment, subjecting McGee to heightened scrutiny and demeaning her illness and disability, such that the conditions of McGee's employment were altered.

131.   McGee belonged to a protected class based on her disability.

132.   The City has recognized that the Plaintiff was disabled.

133.   At all times, O'Connor and Andolino acted under color of law.

134.   After McGee became disabled due to her cancer, O'Connor began discriminating against, criticizing and demeaning McGee because of her disability.

135.   Other non-disabled DOA employees did not receive the same intentional disparate treatment from O'Connor.

136.   At all times, Andolino knew of or turned a blind eye to O'Connor's discrimination against McGee based on McGee's disability.

18

137.   Other non-disabled DOA employees were allowed to work intermittently from the downtown location.

138.   O'Connor refused to allow McGee to work even a partial day from the downtown location.

139.   O'Connor, with Andolino's knowledge, refused to allow any HR staff under her control to grant any reasonable accommodations for McGee's disability.

140.   Also because McGee was disabled, O'Connor held McGee to a different standard than other non-disabled DOA employees.

141.   Even though McGee adequately continued to perform her job, O'Connor, with Andolino's knowledge, threatened terminating McGee stating she was on "official notice" of losing her job.

142.   At the time O'Connor made this statement, McGee had not incurred any recorded marks against her job performance.

143.   O'Connor discriminated against McGee because McGee was disabled.

144.   The Equal Protection Clause protects McGee from being discriminated against solely because of her disability.

145.   McGee can enforce her Constitutional right to Equal Protection through §1983.

146.   At all times, Andolino was a final policymaker regarding DOA policies.

147.   It was the City's custom and policy to allow the Commissioner of the DOA and even the Deputy Director of the O'Hare Modernization Project to control HR personnel within the DOA.

148. This custom and policy essentially prevented employees such as McGee from effectively finding reprieve through complaints against her supervisors' illegal conduct.

**COUNT V**
**VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT ("FMLA")**
**(DISCRIMINATION)**
**(AGAINST ALL DEFENDANTS)**

149. The Plaintiff adopts and incorporates by reference the allegations of paragraphs 1-147 of the complaint.

150. At all times, the FMLA was in effect, granting McGee certain federally protected rights due to her serious health condition (cancer) and related treatment.

151. At all times McGee was employed by the City. Also, O'Connor and Andolino were employers under the FMLA, as they acted in the direct interest of the City relative to McGee.

152. McGee applied for FMLA leave immediately upon learning of her cancer – a serious medical condition under the FMLA. McGee took FMLA leave for cancer surgery and intermittent leave for subsequent continued cancer treatment.

153. After McGee applied for and took approved FMLA leave, O'Connor began confronting and criticizing McGee due to her FMLA absences for medical treatment.

154. O'Connor, in her role as McGee's supervisor and head of HR for McGee's division intentionally subjected McGee to discriminatory treatment by creating a hostile work environment, subjecting McGee to heightened scrutiny and demeaning her illness and disability, such that the conditions of McGee's employment were altered.

155.    After McGee filed for FMLA leave, O'Connor began engaging McGee in a hostile manner, and threatened that McGee was on "official notice" of losing her job, even though McGee had not incurred any negative performance marks at the time.

156.    McGee's taking FMLA leave as a motivating factor of O'Connor's discriminatory treatment.

157.    Andolino intentionally subjected McGee to discriminatory treatment or knowingly turned a blind eye to O'Connor's discriminatory treatment, including heightened scrutiny and demeaning McGee because of her FMLA protected absences from work due to her cancer and related treatment.

158.    O'Connor and Andolino intentionally discriminated against McGee because McGee took FMLA leave.

**COUNT VI**
**VIOLATION OF THE FAMILY AND MEDICAL LEAVE ACT ("FMLA")**
**(INTERFERENCE AND HARASSMENT)**
**(AGAINST ALL DEFENDANTS)**

159.    The Plaintiff adopts and incorporates by reference the allegations of paragraphs 1-157 of the Complaint.

160.    In addition to subjecting McGee to discriminatory treatment and a hostile work environment, Defendants interfered with McGee's right to FMLA leave.

161.    The FMLA allows certain employees twelve weeks of protected leave in a twelve-month period.

162.    Defendants refused to allow McGee a reasonable accommodation so she could work part-time or in "Light Duty" on certain days when she had downtown Cancer treatment or when she was too weak to travel to O'Hare.

163.     Instead, Defendants forced McGee to use up her FMLA-protected leave days on such occasions.

164.     Defendants' intentional conduct interfered with McGee's right to protected FMLA time and caused McGee's protected FMLA leave to expire prematurely.

**COUNT VII**
**VIOLATION OF THE FMLA**
**(RETALIATION)**
**(AGAINST ALL DEFENDANTS)**

165.     The Plaintiff adopts and incorporates by reference the allegations of paragraphs 1-163 of the complaint.

166.     When McGee returned from her cancer-related surgeries and subsequent FMLA leave, O'Connor retaliated against McGee's FMLA absence and made various comments to McGee indicating that O'Connor was unhappy that McGee had taken time off including a comment that : "you have a lot of catching up to do."

167.     McGee complained/attempted to complain to McKeown about O'Connor's discrimination and criticism of McGee for taking FMLA leave.

168.     O'Connor retaliated against McGee by, among other things:

   a.  Taking McKeown off of McGee's case;

   b.  Preventing McKeown from investigating McGee's complaint;

   c.  Further harassing McGee;

   d.  Threatening to terminate McGee; and

   e.  Chastising and embarrassing McGee for complaining about O'Connor's conduct.

169. O'Connor's conduct was intended and designed to discourage McGee from exercising her FMLA rights or from complaining about O'Connor's discriminatory conduct.

170. O'Connor intentionally retaliated against McGee by creating a hostile work environment, subjecting McGee to heightened scrutiny and demeaning her illness and disability, such that the conditions of McGee's employment were altered.

171. McGee's attempt to complain to McKeown and her subsequent meeting with the City's downtown HR department was a motivating factor of O'Connor's retaliatory treatment including harassing and threatening McGee's termination.

172. Andolino condoned or knowingly turned a blind eye to O'Connor's retaliatory treatment.

173. Andolino retaliated against McGee for complaining to HR and for filing charges with the EEOC by subsequently submitting a negative performance memo to McGee's file.

## COUNT VIII
## VIOLATION OF §1983: FMLA
## (AGAINST ALL DEFENDANTS)

174. The Plaintiff adopts and incorporates by reference the allegations of paragraphs 1-172 of the Complaint.

175. At all times, the FMLA was in effect, granting McGee certain federally protected rights due to her serious health condition (cancer) and related treatment.

176. O'Connor, in her role as McGee's supervisor and head of HR for McGee's division intentionally subjected McGee to discriminatory treatment by creating a hostile

work environment, subjecting McGee to heightened scrutiny and demeaning her illness and disability, such that the conditions of McGee's employment were altered.

177.    At all times O'Connor acted under color of law.

178.    McGee filed an FMLA request seeking leave for her cancer related surgeries, and subsequently seeking intermittent leave for continued treatment.

179.    After McGee filed for FMLA leave, O'Connor began engaging McGee in a hostile manner, and threatened that McGee was on "official notice" of losing her job, even though McGee had not incurred any negative performance marks at the time.

180.    O'Connor's conduct discriminated against or was in retaliation for McGee seeking to benefit from her FMLA protected rights.

181.    At all times, Andolino, in her role as the Commissioner of the DOA, acted under color of law.

182.    Andolino was a final policymaker for the City for policies within the DOA.

183.    Andolino intentionally discriminated against or knowingly turned a blind eye to O'Connor's intentional discrimination of McGee, including heightened scrutiny and demeaning McGee because of her cancer and related treatment.

184.    At all times, Andolino was a final policymaker regarding DOA policies.

185.    It was the City's custom and policy to allow the Commissioner of the DOA and even the Deputy Director of the O'Hare Modernization Project to control HR personnel within the DOA.

186.    This custom and policy essentially prevented employees such as McGee from effectively finding reprieve through complaints against her supervisors' illegal conduct.

187.    Defendants' conduct deprived McGee of FMLA protected rights, privileges and immunities.

## COUNT IX
## COMMON LAW ASSAULT
## (Against O'Connor)

188.    The Plaintiff, Jill McGee, adopts and incorporates by reference the allegations in Paragraphs 1 –186 of this Complaint.

189.    On August 25, 2009, O'Connor stormed into McGee's office, leaned into McGee's face and threatened McGee.  When McGee attempted to find McKeown to mediate the situation, O'Connor continued to closely follow and berate McGee.

190.    O'Connor intended to intimidate McGee and place her in apprehension or an imminent unwanted touch.

191.    On no fewer than six other occasions, O'Connor's actions towards McGee were intended to instill fear and otherwise intimidate McGee.

192.    McGee feared an imminent violent or unwanted touch or battery on each of these occasions, and especially on August 25, 2009.

193.    On another occasion, O'Connor confronted Plaintiff in an elevator and lobby in Plaintiff's condo building in a threatening and intimidating manner, yelling at her and placing Plaintiff in reasonable apprehension of imminent bodily harm.

194.    McGee's fear or apprehension was proximately caused by her personal knowledge of O'Connor's short temper, malicious attitude towards McGee, and actions including leaning into McGee's face and closely following her down the hallway to HR.

**COUNT X**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(Against O'Connor)**

195.    The Plaintiff, Jill McGee, adopts and incorporates by reference the

allegations in Paragraphs 1-193 of this Complaint.

196.    O'Connor intended to cause severe emotional distress in McGee.

197.    The Defendants' conduct  and workplace violence towards McGee during

a period while she was undergoing and continuously recovering from cancer-related

treatment was extreme, outrageous and beyond the bounds of moral decency.

198.    The Defendants' conduct was so outrageous that no reasonable person

could be expected to endure it.

199.    As a result of the Defendants' conduct, McGee suffered severe emotional

distress, including depression.

**COUNT XI**
**VIOLATION OF THE ILLINOIS HUMAN RIGHTS ACT**
**(AGAINST ALL DEFENDANTS)**

200.    Plaintiff adopts, realleges and incorporates by reference all allegations

contained in paragraphs 1-198 of this Complaint as this paragraph.

201.    The Illinois Human Rights Act prohibits disability in employment based on

the employee's actual or perceived disability or handicap.

202.    Each of the Defendants constitutes an "employer" within the meaning of

the Illinois Human Rights Act with respect to claims of disability and/or handicap

discrimination.

203.    At all relevant times as complained, McGee was a qualified individual with

a disability and/or handicap under the Illinois Human Rights Act. McGee's cancer

26

constituted a disability and/or handicap, or was perceived as creating a disability or handicap under the Illinois Human Rights Act.

204.    McGee was qualified to perform her job and in fact performed her job satisfactorily even though she had cancer and was undergoing treatment.

205.    The Defendants discriminated against the Plaintiff based on her disability and/or handicap by denying her request for accommodation, subjecting her to a harassing and hostile work environment, by retaliating against her and by attempting to intimidate and/or threaten the Plaintiff.

206.    As a direct and proximate result of the Defendants' conduct, the Plaintiff was injured and has been damaged.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff, Jill McGee, prays that this Honorable Court:

a.      Enter judgment in the Plaintiff's favor and against the Defendants;

b.      Award the Plaintiff her actual damages suffered, including lost wages, back pay, benefits, and other damages to the extent permissible under applicable law;

c.      Award Plaintiff compensatory damages to the extent permissible under applicable law;

d.      Award Plaintiff punitive and/or exemplary damages against the individual Defendants only and to the extent permissible, if available, under applicable law;

e.      Enjoin the City and its agents O'Connor and Andolino from violating the Plaintiff's rights and from their continued harassment, intimidation and discrimination against Plaintiff;

f.      Award the Plaintiff pre-judgment interest, and/or statutory penalties;

g.      Award the Plaintiff her reasonable costs and attorneys' fees;

h.      Award the Plaintiff her make-whole relief, including reinstatement;

i.      Award the Plaintiff front pay and/or other damages to the extent permissible under applicable law, if available; and

j.      Grant Plaintiff such further relief as this Court deems appropriate and just.

**THE PLAINTIFF DEMANDS A TRIAL BY JURY.**

Respectfully submitted,
HUNT & ASSOCIATES P.C.

/s/ Keith L. Hunt electronic signature
By:     An Attorney for the Plaintiff

Keith L. Hunt
Bradley E. Faber
Hunt & Associates, P.C.
Three First National Plaza, Suite 2100
Chicago, Illinois 60602
(312) 558-1300