IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JILL MCGEE, | ) |
| Plaintiff, | ) ) ) |
| | ) No. 11 C 2512 |
| v. | ) ) The Honorable William J. Hibbler |
| CITY OF CHICAGO, an Illinois municipal Corporation, ELLEN O'CONNOR, individually, and ROSEMARIE S. ANDOLINO, individually, | ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jill McGee brings this lawsuit against her employer, Defendant City of Chicago, and two of her supervisors, Defendants Ellen O'Connor and Rosemarie Andolino, alleging that she was the victim of discrimination based on the fact that she had cancer and attempted to exercise certain rights as an employee. She alleges violations of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*, the Illinois Human Rights Act (IHRA), 775 Ill. Comp. Stat. § 5/101 *et seq.*, and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. She also brings various state law tort claims. Defendants now move to dismiss a number of her claims. For the following reasons, the Court GRANTS the motion in part and DENIES it in part.

## *BACKGROUND*

McGee alleges the following facts in her complaint, which the Court must accept as true for purposes of Defendants' motion. *Disability Rights Wisc., Inc. v. Walworth County Bd. of Supervisors*, 522 F.3d 796, 799 (7th Cir. 2008).

1

McGee is the Deputy Commissioner of Marketing and Communications for the City's Department of Aviation. O'Connor is her immediate supervisor and Andolino is the Commissioner of Aviation. She began working for the Department in February 2007. By March 3, 2009, McGee was diagnosed with breast cancer. She immediately applied for, and was granted, intermittent FMLA leave for the period from March 13, 2009 until December 31, 2009. Despite undergoing multiple surgeries and radiation therapy as part of her treatment, McGee contacted O'Connor in April 2009 to discuss her options for returning to work. She suggested that she could perform part-time work until she was more fully recovered and indicated that she could be most helpful if she were allowed to work from the Department's satellite office in downtown Chicago, rather than from the main office near O'Hare airport, which required a longer commute. Even prior to her diagnosis, McGee had worked approximately one day a week from the downtown office. O'Connor refused her request. McGee was therefore unable to return to work part-time.

On May 14, 2009, McGee returned to work full-time. Upon her return, and based on advice from the Human Resources Department, she submitted a request for an accommodation pursuant to the ADA. She requested that she be allowed to work from the downtown office on days when she had medical appointments and she experienced fatigue due to post-surgical cancer treatment. She also requested accommodations based on limitations for lifting, pushing, pulling, and reaching. On May 19, 2009, the Department of Aviation created a "Reasonable Accommodation Interactive Process" memorandum that indicated that working at the downtown office would not eliminate an essential job function nor create an undue hardship for the Department. Nonetheless, O'Connor denied McGee's request. O'Connor also berated McGee

for submitting the request and told her she would have to catch up on work due to the leave she had taken.

McGee then met with the Department's Assistant Commissioner of Human Resources, William McKeown. O'Connor was present at the meeting. McKeown informed McGee that she should take unpaid FMLA leave on days when she was unable to commute to O'Hare, but did not provide a final answer regarding her request. On July 28, 2009, McKeown informed her that her ADA request was approved in part, but that her request to work from the downtown office remained under review. The City never provided McGee with a final answer, but never provided the accommodation. Upon information and belief, McGee alleges that O'Connor discouraged McKeown from granting McGee's request.

In the subsequent months, O'Connor repeatedly harassed McGee both in and out of the office. When McKeown offered to mediate the situation, O'Connor, who was also McKeown's supervisor, removed him as the acting Human Resources representative on McGee's ADA and FMLA case.

O'Connor's harassment of McGee continued even after McGee's counsel submitted a letter to the City indicating that it was violating McGee's ADA rights and requesting compliance. O'Connor subjected her to heightened scrutiny and suggested that her cancer-related absences were impacting her job performance. She told McGee that she was on "official notice" that she may face termination. She criticized McGee for missing work to meet with the Mayor's Office for Persons with Disabilities about her situation.

On February 10, 2010, McGee filed charges of discrimination with the Equal Employment Opportunity Commission (EEOC) and the Illinois Department of Human Rights (IDHR). On March 30, O'Connor and Andolino scheduled a meeting with McGee. In the

meeting, Andolino and O'Connor criticized McGee's work despite the fact that O'Connor's actions had prevented McGee from performing her work. Andolino submitted a memo to McGee's personnel file criticizing her performance. McGee alleges that Andolino was aware of the charges McGee had filed at that point, and knew of O'Connor's discriminatory treatment.

In April 2010, upon her physician's recommendation, McGee requested FMLA leave as a result of O'Connor's harassment. Despite attempts by O'Connor to interfere with her request, she was granted leave that extended until the time she filed her complaint in this case.

## *DISCUSSION*

### I. Standard of review

Motions to dismiss test the sufficiency, not the merits, of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss under federal notice pleading, a claimant must "provide the grounds of his entitlement to relief" by alleging "enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65, 167 L. Ed. 2d 929 (2007) (internal quotation marks, brackets, and citation omitted). Specific facts are not necessary. *Erickson v. Pardus*, 551 U.S. 89, 93, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007). The Court treats well-pleaded allegations as true, and draws all reasonable inferences in the claimant's favor. *Disability Rights Wisc.*, 522 F.3d at 799.

### II. Analysis

#### A. Section 1983 claims

##### 1. Foreclosure by ADA, FMLA

The City first moves to dismiss McGee's Section 1983 claims. Section 1983 provides a private right of action to remedy violations of constitutional and federal statutory rights committed under color of law. 42 U.S.C. § 1983. McGee bases her three Section 1983 claims

on violations of the ADA (Count III), the FMLA (Count VIII), and the Equal Protection Clause of the Fourteenth Amendment (Count IV). The City argues that her Equal Protection claim is actually based on alleged ADA violations and moves to dismiss all three of her claims on the ground that Section 1983 cannot be used to remedy ADA and FMLA violations.

A plaintiff may sue under Section 1983 to enforce a federal statute unless "Congress has foreclosed such enforcement of the statute in the enactment itself [or]…the statute did not create enforceable rights, privileges, or immunities within the meaning of § 1983." *Wright v. Roanoke Redev. & Hous. Auth.*, 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781 (1987). Courts "do not lightly conclude that Congress intended to preclude reliance on § 1983 as a remedy for the deprivation of a federally secured right." *Id.* at 423-24, 107 S. Ct. at 770 (internal quotation omitted). However, Congress need not expressly foreclose enforcement of a federal right through Section 1983. Instead, the Court may glean the legislature's intent from the fact that it provided a "comprehensive enforcement mechanism" for the statute. *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 106, 110 S. Ct. 444, 448, 107 L. Ed. 2d 420 (1989) (internal brackets and quotation omitted).

The Seventh Circuit has yet to rule on whether the enforcement mechanisms in the ADA and FMLA are sufficiently comprehensive as to preclude enforcement of the statutes through Section 1983. But, the Seventh Circuit has held that the enforcement mechanism in Title VII of the Civil Rights Act is sufficiently comprehensive. *Alexander v. Chicago Park Dist.*, 773 F.2d 850, 856 (7th Cir. 1985). The ADA imports the "powers, remedies, and procedures" of Title VII. 42 U.S.C. § 12117(a). Thus, the Court finds that litigants are similarly unable to seek enforcement of the ADA through Section 1983. *See Holmes v. City of Chicago*, No. 94 C 4083, 1995 WL 270231, *5 (N.D. Ill. May 5, 1995).

*Alexander* does not provide the same guidance with regard to the FMLA, however. The FMLA enforcement mechanism is modeled not on Title VII, but on that of the Fair Labor Standards Act (FLSA). S. Rep. No. 103-3, at 32 (1993). The Seventh Circuit has not addressed the propriety of enforcement of either statute through Section 1983. District Courts across the country have split on the issue with regard to the FMLA. *Compare, e.g., O'Hara v. Mt. Vernon Bd. of Educ.*, 16 F. Supp. 2d 868, 895 (S. D. Ohio 1998) (precluding use of § 1983 to enforce the FMLA), *with Knussman v. State of Maryland*, 16 F. Supp. 2d 601, 610 (D. Md. 1998) (allowing use of § 1983 to enforce the FMLA). The FMLA enforcement scheme is somewhat less complicated than that provided by Title VII, in that there is no agency, such as the EEOC, which considers claims prior to filing in federal court. *See* 29 U.S.C. § 2617. This is significant because it means that enforcement through Section 1983 would not conflict with the FMLA scheme by allowing circumvention of administrative procedures. *See Knussman*, 16 F. Supp. 2d at 610.

However, while simpler, the scheme is not less comprehensive than that of Title VII. There is no indication in the language of the statute, or in McGee's briefs, that the statute fails to provide for comprehensive enforcement of the rights it creates. Moreover, despite the fact that there is no administrative component to FMLA enforcement, there is still potential for conflict between Section 1983 enforcement and the enforcement mechanism of the FMLA. The FMLA provides for private rights of action, as well as for action by the Secretary of Labor. 29 U.S.C. §§ 2617(a)(2), (b), & (d). In the event that the Secretary pursues a claim, the private litigant may no longer pursue an individual claim. 29 U.S.C. § 2617(a)(4). Allowing a litigant to circumvent this procedure by filing a Section 1983 claim simultaneously would frustrate the scheme Congress provided. For these reasons, the Court finds that McGee may not pursue her FMLA

claim under Section 1983 either. Thus, the Court grants Defendants' motion to dismiss Counts III and VIII of the complaint.

The Court denies Defendants' motion to dismiss Count IV on these same grounds, however. In Count IV, McGee seeks to enforce her rights under the Equal Protection Clause of the Fourteenth Amendment through Section 1983, not a statute. That the facts that give rise to her claim may mirror those that form the basis of her ADA claim is irrelevant. *Trigg v. Fort Wayne Cmty. Schs.*, 766 F.2d 299, 302 (7th Cir. 1985).

### 2. Municipal liability

The City also moves to dismiss Count IV insofar as it alleges municipal liability. While Section 1983 does not provide for *respondeat superior* liability, it does provide for municipal liability when the underlying violation is caused by a government policy or custom. *Monell v. Dept. of Social Servs. of the City of New York*, 436 U.S. 658, 694-95, 98 S. Ct. 2018, 2037-38, 56 L. Ed. 2d 611 (1978). In order to sufficiently plead a "*Monell* claim," a plaintiff must allege that "(1) the City had an express policy that, when enforced, causes a constitutional deprivation; (2) the City had a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage within the force of law; or (3) plaintiff's constitutional injury was caused by a person with final policymaking authority." *McCormick v. City of Chicago*, 230 F.3d 319, 324 (7th Cir. 2000).

McGee alleges that the City had a policy of allowing the top officials in its departments, such as Andolino and O'Connor, to control Human Resources personnel responsible for addressing ADA and FMLA requests. As a result, she claims that she was unable to properly pursue claims of discrimination against Andolino and O'Connor. While McGee provides little in the way of facts regarding the specific contours of the policy, whether the policy was express or more akin to a custom, or how widespread it was, she does allege that O'Connor was

McKeown's direct supervisor. This is plausible, since McKeown was an Assistant Commissioner within the Department of Aviation, rather than an officer of some independent Human Resources Department within the City. Given this allegation, it is plausible that the City effectively had a policy allowing Department bosses to control internal Human Resources personnel. Such a policy, in turn, could plausibly lead to bias in investigating complaints of discrimination, which McGee alleges happened here. Whether McGee can prove that the policy or custom existed and that it was in fact the "moving force" behind the deprivation of her constitutional rights, *see Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002), is an entirely different question than the one before the Court. No heightened pleading requirement applies to *Monell* claims. *McCormick*, 230 F.3d at 323. Because McGee's claims are plausible based on the facts she provides, the Court denies the motion to dismiss Count IV as it applies to the City.

### 3. Andolino's liability

McGee's allegations about Andolino's actions are also relatively sparse. She essentially pleads that Andolino had knowledge of O'Connor's discrimination and harassment, and that rather than stopping O'Connor, she participated in her illegal conduct by retaliating against McGee for filing her EEOC charges. She alleges that Andolino subjected her to heightened scrutiny and wrote her up for deficient performance that was actually a result of O'Connor's discrimination.

Andolino likens these allegations to the allegations of discrimination that failed to pass muster under Rule 12(b)(6) in the recent, influential case addressing the rule, *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1951-52, 173 L. Ed. 2d 868 (2009). In that case, the plaintiff alleged that certain high-ranking government officials had discriminated against him based on his race, religion, or national origin, in approving a policy that subjected him to restrictive conditions of

8

confinement when he was detained as part of the government's investigation into the events of September 11, 2001. *Id.* at 1951. The Supreme Court held that the plaintiff's allegations that the defendants "'knew of, condoned, and willfully and maliciously agreed to subject him' to harsh conditions of confinement 'as a matter of policy, solely on account of his religion, race, and/or national origin and for no legitimate penological interest,'" were not entitled to the assumption of truth because they were bare, conclusory assertions that constituted a "formulaic recitation of the elements" of a constitutional discrimination claim. *Id.* (internal brackets omitted) (citing *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1964-65.) The Court then examined the remaining factual allegations, which stated that "the FBI, under the direction of Defendant MUELLER, arrested and detained thousands of Arab Muslim men ... as part of its investigation of the events of September 11," and that "the policy of holding post-September-11th detainees in highly restrictive conditions of confinement until they were 'cleared' by the FBI was approved by Defendants ASHCROFT and MUELLER in discussions in the weeks after September 11, 2001." *Id.* (emphasis in original, internal brackets omitted). The Court held that these allegations were consistent with claims of purposeful discrimination, but that, "given more likely explanations, they [did] not plausibly establish this purpose." *Id.* In other words, the Court held that the investigation into those individuals possibly involved in the September 11th attacks was likely to have a disparate, incidental impact on Arab Muslims even if its purpose was not discriminatory and that "[a]s between that obvious alternative explanation for the arrests and the purposeful, invidious discrimination respondent asks us to infer, discrimination is not a plausible conclusion." *Id.* at 1951-52 (internal quotation and citation omitted).

Here, Andolino's involvement in the alleged discrimination against McGee does bear some resemblance to that of the defendants in *Iqbal*, in that the majority of the facts could be

9

interpreted innocently, leaving a picture of Andolino as a supervisor enforcing legitimate policies regarding employee work quality, ignorant of the discriminatory intentions harbored by her subordinate, O'Connor, and their effects on McGee's work. However, the notable difference here is that there are all sorts of allegations about O'Connor's invidious discrimination, and Andolino allegedly had knowledge of those facts. In *Iqbal*, the question was whether one could presume evil intentions from the impact of the policies that the defendants had approved. Here, taking McGee's allegations regarding O'Connor as true, the Court need only ask whether it is plausible that Andolino's actions were similarly discriminatory when she cooperated with O'Connor by writing McGee up for deficient performance. This is not an unreasonable inference from those of McGee's allegations that the Court can presume to be true.

In order to proceed on a claim against Andolino, McGee need only allege that Andolino was personally responsible for the constitutional deprivation at issue, not that she directly participated in it. *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir. 1982). In other words, she must plead that Andolino "act[ed] or fail[ed] to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occur[ed] at her direction or with her knowledge and consent." *Id.*; *see also Volk v. Coler*, 845 F.2d 1422, 1431 (7th Cir. 1988) (applying *Crowder* in an employment discrimination case). McGee has done this much. Thus, the Court denies Andolino's motion with regard to Count IV.

### B. FMLA Claims

#### 1. FMLA eligibility

Defendants make a number of arguments for dismissal of McGee's FMLA claims as well. The first, and the easiest for the Court to dispose of, is the argument that McGee's claims should be dismissed because she failed to allege in her complaint that she worked at least 1,250 hours for the City in the twelve months preceding her FMLA requests. That is one of the criteria

she must meet in order to be eligible for FMLA leave. *See* 29 U.S.C. § 2611(2)(A)(ii). The Court will not require such a specific allegation of eligibility, at least not in a case such as this. McGee alleges that she worked in her position for years prior to the events that gave rise to her complaint. She also alleges that the City granted her FMLA leave when she requested it. Thus, it is reasonable to infer that she worked at least the minimum number of hours. Moreover, the City is the party in the best position to determine whether McGee did work so many hours, and to prove that she did not. If the City has such proof, they may make the appropriate motion to dispose of these claims at the appropriate time. The Court will not require McGee to amend her complaint on the basis of the Defendants' instant motion.

### 2. No leave denial

Defendants next argue that McGee has not stated a claim for interference with her rights under the FMLA in Count VI because she fails to allege that she was prohibited from taking FMLA leave. The FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the statute. 29 U.S.C. § 2615(a)(1). Case law does suggest that an interference claim must be based on a denial of leave. *See de la Rama v. Ill. Dept. of Human Servs.*, 541 F.3d 681, 687 (7th Cir. 2008) ("in light of the fact that [plaintiff] was permitted to take seventeen weeks of leave – five weeks more than the twelve weeks the Department was required to give her under the FMLA – we find it difficult to see how the Department interfered with her entitlement to leave at all"). McGee argues that because she was forced to use FMLA leave as a result of the improper denials of her ADA accommodation requests, she was forced to unnecessarily use FMLA leave. However, there is no indication that this prohibited McGee from using FMLA leave at a later time because she had run out. McGee points out that FMLA regulations require employers to use "whichever statutory provision provides the greater rights to employees," whether it be under the FMLA or the ADA.

11

29 C.F.R. § 825.702(a). But, the same regulation prohibits double recovery under the FMLA and the ADA. *Id.* The bottom line is that McGee used her FMLA leave as the result of an alleged violation of the ADA. Thus, her claim for FMLA interference is essentially a redundant attempt to recover the damages from her ADA claim, which might include the fact that she had to take unpaid leave instead of being reasonably accommodated at work. McGee may pursue her ADA claim, rather than attempting to pursue a claim under the FMLA that does not fit well within the language of the statute or case law. The Court grants Defendants' motion to dismiss Count VI.

### 3. Redundant allegations

Defendants next move to dismiss Count VII on the grounds that it is duplicative of Count V. McGee's complaint labels these two counts as claims for "discrimination" under the FMLA and "retaliation" under the FMLA. Defendants argue that the claims are one and the same under the FMLA, and that the same facts give rise to both. For support of their argument, Defendants point to *Kauffman v. Fed. Express Corp.*, 426 F.3d 880, 884 (7th Cir. 2005), which distinguishes not between "discrimination" and "retaliation" under the FMLA, but rather between "discrimination/retaliation" claims and "interference/entitlement claims." However, the fact is that the FMLA contains two provisions outlawing discrimination and retaliation. Section 2615(a)(2) makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful" by the FMLA. 29 U.S.C. § 2615(a)(2). Section 2615(b) makes it "unlawful for any person to discharge or in any other manner discriminate against any individual because such individual" filed charges or participated in inquiries or proceedings provided for by the FMLA. 29 U.S.C. § 2615(b). Thus, there is potentially a distinction to be made between retaliation for general opposition to FMLA violations as opposed to retaliation for filing for FMLA leave. At the very least, Congress made

a distinction, even if it proves meaningless as the facts are developed. But, if McGee bases her claims under both provisions on precisely the same facts, then Defendants are not prejudiced by the fact that she brings her claims under two different headings at this point. The Court therefore denies Defendants' motion on this point.

### 4. Individual liability in the public sector

Andolino and O'Connor also argue that the FMLA does not provide for individual liability in the public sector. They base their argument on their reading of the statute's definition of employer, which separates the provisions describing individuals and public agencies as employers as follows:

> The term "employer"--
>
> (i) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;
>
> (ii) includes--
>
> > (I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and
> >
> > (II) any successor in interest of an employer;
>
> (iii) includes any "public agency", as defined in section 203(x) of this title; and
>
> (iv) includes the Government Accountability Office and the Library of Congress.

29 U.S.C. § 2611(4)(A). There is a split among Courts of Appeals as to whether the Defendants' interpretation is correct. *Compare Mitchell v. Chapman*, 343 F.3d 811, 829-32 (6th Cir. 2003) (holding that there is no individual liability in the public sector), *and Wascura v. Carver*, 169 F.3d 683, 685-87 (11th Cir. 1999) (same), *with Modica v. Taylor*, 465 F.3d 174, 186 (5th Cir. 2006) (holding that individuals acting on behalf of public agencies may be held liable) *and*

13

*Darby v. Bratch*, 287 F.3d 673, 681 (8th Cir. 2002) (same). The Seventh Circuit has rejected the reasoning in *Wascura, Luder v. Endicott*, 253 F.3d 1020, 1022 (7th Cir. 2001), but has not yet provided its own interpretation of the definition.

The Court is persuaded by the reasoning presented by other opinions from this district, *see, e.g., Brunson v. Forest Pres. Dist. of Cook Cnty.*, No. 08 C 2200, 2010 WL 780331, *7 (N.D. Ill. Mar. 3, 2010), and holds that the FMLA does provide for liability for individuals acting on behalf of public agencies. The statute makes clear that a public agency is an employer under the FMLA. The statute also makes clear that "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer" is an employer. Thus, any person who acts in the interest of a public agency must be an employer. The fact that the provisions are separated, or that they are separated by semi-colons instead of em-dashes, seems irrelevant. *But see Mitchell*, 343 F.3d at 829 (discussing the significance of the em-dashes). The Court denies Defendant's motion to dismiss the remaining FMLA claims against Andolino and O'Connor.

### 5. Andolino's liability

Finally, Andolino argues that McGee's allegations regarding Andolino's involvement in the alleged FMLA discrimination are too sparse to state a claim. But she concedes that she is subject to individual liability if: (1) she had supervisory authority over McGee; and (2) she was at least partly responsible for the alleged violation. *See Alcazar-Anselmo v. City of Chicago*, No. 07 C 5246, 2008 WL 1805380, *2 (N.D. Ill. Apr. 18, 2008). Given the Court's analysis regarding Andolino's liability under Section 1983, there is no doubt that McGee has met these requirements. The Court denies Andolino's motion to dismiss the remaining FMLA claims on this ground.

### C. IHRA Claims

Finally, Defendants move for partial dismissal of the IHRA claims. First, O'Connor moves to dismiss the claims insofar as they allege individual liability.[1] The IHRA definition of employer does not mention supervisory employees or agents of employers. *See* 775 Ill. Comp. Stat. § 5/2-101(B). Moreover, O'Connor points out that the IHRA only mentions liability for "agents of employers" in the provision regarding sexual harassment. *Id.* at § 5/2-102(D). McGee's claims that *Sangamon County Sheriff's Department v. Illinois Human Rights Commission*, 233 Ill. 2d 125, 908 N.E.2d 39 (2009), expanded the definition to include employers' agents. However, *Sangamon County* actually addressed the question of when an employer is strictly liable for the sexual harassment carried out by its supervisory employees. *Id.* Thus, McGee is unable to provide any indication that the IHRA definition extends to individual supervisory employees. The Court therefore dismisses the IHRA claim against O'Connor.

The City also moves to dismiss McGee's IHRA failure to accommodate claim as untimely. The IHRA requires charges to be brought within 180 days of a civil rights violation. 775 Ill. Comp. Stat. § 5/7A-102(A)(1). McGee filed her charge on February 10, 2010. Therefore, she may not base her claim on conduct that occurred prior to August 15, 2009. The City argues that McGee's request for an accommodation was denied prior to that date. However, the Complaint actually makes clear that McGee was unable to obtain a definitive answer to her request, was told that it was still pending, and was still requesting a response well after August 15, 2009. Thus, the conduct she complains of extended into the covered period. The Court denies the City's motion to dismiss any portion of the IHRA claim against it.

---

[1] McGee has already voluntarily withdrawn her IHRA claim against Andolino.

## CONCLUSION

For these reasons, the Court GRANTS Defendants' motion to dismiss Counts III, VI, and VIII in their entirety. The Court also GRANTS Defendant O'Connor's motion to dismiss Count XI insofar as it pertains to her. The Court DENIES the remaining relief requested in Defendants' motion.

IT IS SO ORDERED.

9/16/11
Dated

Hon. William J. Hibbler
United States District Court